# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| KIMBERLY BLAIR, | : | Case No. 3:16-cv-00339 |
| | : | |
| Plaintiff, | : | District Judge Walter H. Rice |
| | : | Magistrate Judge Sharon L. Ovington |
| vs. | : | |
| | : | |
| NANCY A. BERRYHILL, | : | |
| Commissioner of the Social | : | |
| Security Administration, | : | |
| | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

Plaintiff Kimberly Blair joined the U.S. Marine Corps in 1984 and served until 1996. During her active military service, she suffered accidental injuries to her back and neck that cause her chronic pain. She has additional health problems including stress-related headaches/migraines, depression, and anxiety. After her active-duty military service, the Veterans Administration found her eligible to receive veterans' benefits due to her service-related injuries.

Plaintiff's post-military jobs included work as a security/police officer. Her last job (at the Dayton Osteopathic Hospital) ended in 2005 because she was missing too many work days due to her back problems and migraines. (Doc. #7, *PageID* #866).

In 2009, Plaintiff applied for Disability Insurance Benefits with the Social Security

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

Administration. She asserted that she had been under a "disability," as defined by the Social Security Act, starting on July 31, 2005. First one and later a second Administrative Law Judge found Plaintiff not eligible to receive benefits because she was not under a disability. In the present case, Plaintiff challenges the most recent ALJ's—Elizabeth A. Motta's—decision denying her benefits.

The present review of ALJ Motta's decision determines whether she applied the correct legal standards and whether substantial evidence supports her findings. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). If ALJ Motta failed to apply the correct legal criteria, her decision may be fatally flawed even if the record contains substantial evidence supporting her findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004).

A conclusion is supported by substantial evidence when "a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance ...." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

Before reaching ALJ's Motta decision, a discussion of its historical context is warranted. Plaintiff's application and evidence first proceeded to consideration by ALJ Thomas R. McNichols, II under the 5-step sequential evaluation required by Social Security law. *See* 20 C.F.R. § 404.1520(a)(4). He found that Plaintiff had severe

2

impairments of "chronic neck and low back pain, attributed to degenerative disc disease with osteoarthritic changes, 'stress-related' headaches, with infrequent migraines; depression; and anxiety." (Doc. #6, *PageID* #74). ALJ McNichols further found, in pertinent part, that Plaintiff could perform sedentary work with many limitations, for example, "[S]he must be free to alternative positions between sitting and standing at one-hour intervals throughout the workday…. She is limited to low stress work (defined as not production quotas and no fast-paced work." *Id*. at 77. These and other findings led ALJ McNichols to the conclusion that a significant number of jobs existed that Plaintiff could perform and, consequently, she was not under a benefits-qualifying disability.

Plaintiff successfully challenged ALJ McNichols' decision in this Court due to his unclear explanation of how much weight he placed on the VA's disability determination and the specific reasons for that weight. (Doc. #7, *PageID* #s 1013-14). The matter thus returned to the Social Security Administration where ALJ Motta took over.

After holding a hearing, ALJ Motta issued a decision recognizing that Plaintiff was forty-four years old on the date she was last insured and was consequently considered a "younger" person for the purpose of resolving her application for benefits. ALJ Motta also recognized that Plaintiff had a least a high school education.

Plaintiff testified during the hearing held by ALJ Motta that she injured her back on a Marine Corps obstacle course by falling 15 feet and landing on the back of her head. (Doc. #7, *PageID* #875). She explained, "I was in sergeant school when that happened. I was paralyzed from the neck down for three days. After that happened, I progressively got to the point where I could not perform my duties." *Id.* Upon receiving her discharge

3

from active duty in 1996, Plaintiff received a 20% disability rating from the VA due to her back injury. *Id*. at 864. Her disability rating increased thereafter partly because she developed migraine headaches. In 2008, she began to receive "total disability" backdated it to 2006. *Id*. at 865.

A document dated October 21, 2008 establishes that the VA assessed Plaintiff's disability rating at a total of 100 percent, broken down as follows: 50% disability due to migraines with aura effective October 20, 2006; a chronic sprain in cervical spine was 20% disabling; degenerative disc disease in her lumbosacral spine was 20%; and ethmoid sinusitis (bilaterally) was 10% disabling. (Doc. #6, *PageID* #s 508-09). Doing so, the VA concluded that Plaintiff was entitled to "individual unemployability effective October 6, 2006, the date the entitlement arose." *Id*. at 512. The VA explained, in part, "Entitlement to individual unemployability is granted because the claimant is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities." *Id*. at 513.

Medical records in 2012 indicate that the VA rated Plaintiff as 70% disabled. Plaintiff testified before ALJ Motta, "[T]hey rated me 70 percent, but they consider me unemployability, so they pay me at 100 percent." *Id*. at 877.

Plaintiff testified that she stopped working her last job because her back injury and migraines caused her to miss too much work. *Id*. at 866. She reported that she had undergone two back surgeries—one in 2012 and one in 2014.

ALJ Motta concluded in her decision that Plaintiff was not under a disability by conducting the Social Security Administration's 5-step evaluation. *See* 20 C.F.R. §

4

404.1520(a)(4). Her more significant findings began with her conclusion that Plaintiff had several severe impairments—lumbar degenerative disc disease, cervical degenerative disc disease; and migraines—but her impairments did not automatically constitute a disability.[2] (Doc. #7, *PageID* #s 835). ALJ Motta then assessed Plaintiff's residual functional capacity or the most she could do despite her impairments. *See* 20 C.F.R. § 404.1545(a); *see also Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002). Doing so, the ALJ found that despite Plaintiff's impairments, she could perform a limited range of light work. She specifically found that Plaintiff could lift and carry 20 pounds occasionally or 10 pounds frequently, subject to the following:

> [T]he individual would need to be off her feet for 15 minutes of every hour (this could be broken up over the hour but total standing and walking would still be six hours in an eight-hour workday); occasional postural activity (climbing ramps/stairs, balancing, stooping, kneeling, crouching crawling, and twisting side to side; frequent handling and fingering bilaterally; no climbing ladders, ropes, or scaffolds; no exposure to hazards, such as dangerous machinery or working at unprotected heights; and low stress work, defined as not strict production quotas or fast pace.

(Doc. #5, *PageID* #s 69-70). These limitations, according to ALJ Motta, prevented Plaintiff from being able to perform her past work but did not prevent her from performing a significant number of available jobs. *Id*. at 848. This meant that she was not under a disability and not entitled to benefits. *Id*. at 848-49.

Plaintiff contends that ALJ Motta's decision did not comply with the Court's

---

[2] A social security applicant that meets or equals the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, is automatically under a disability. *See* 20 C.F.R. § 404.920(a)(iii); *see also Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

5

remand Order by failing to provide meaningful reasons for placing moderate weight on, or essentially rejecting, the VA's disability determination. And, according to Plaintiff, ALJ Motta's omission of meaningful reasons is problematic because it requires speculation to understand the ALJ's rationale.

Social Security ALJs are not free to ignore judicial Orders:

> In some Social Security cases, district courts will include detailed instructions concerning the scope of the remand and the issues to be addressed. In such cases, "[d]eviation from the court's remand order in subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review." *Sullivan v. Hudson,* 490 U.S. 877, 886, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989). *See also Mefford v. Gardner,* 383 F.2d 748, 758 (6th Cir. 1967) (noting "the general rule that, on the remand of a case after appeal, it is the duty of the lower court, or the agency from which appeal is taken, to comply with the mandate of the court and to obey the directions therein without variation and without departing from such directions."). These cases stand for the proposition that the administrative law judge may not do anything expressly or impliedly in contradiction to the district court's remand order. These cases do not preclude the ALJ from acting in ways that go beyond, but are not inconsistent with, the district court's opinion....

*Hollins v. Massanari,* 49 Fed. App'x 533, 536 (6th Cir. 2002).

This Court's previous Order concerning ALJ McNichols' non-disability cogently discussed the Social Security Administration's view of VA disability determinations together with applicable case law:

> Simply put, "the decision of another governmental agency is not binding on the Commissioner[.])" *Rothgeb v. Astrue,* 626 F.Supp.2d 797, 809 (S.D. Ohio 2009). Nevertheless, the ALJ must "consider it" and "articulate reasons for the amount of weight he or she assigns to that decision." *Id.* (citations omitted)); *see also, LaRiccia,* 549 F. App'x [377, 388 (6th Cir. 2013)] (stating that an ALJ must provide "reasons for the weight afforded the VA disability determination").

6

> With regard to weight, the Sixth Circuit recently reiterated its conclusion "that a disability rating from the [VA] is entitled to consideration, but we have not specified the weight such a determination should carry when determining [S]ocial [S]ecurity disability eligibility." *Ritchie v. Comm'r of Soc. Sec.,* 540 F. App'x 508, 510 (6th Cir. 2013) (citation omitted). Instead, "the relative weight to be given this type of evidence will vary depending upon the factual circumstances of each case[,]" and "ALJs need not give 'great weight' to a VA disability determination if they adequately explain the valid reasons for not doing so." *King v Comm'r of Soc Sec.,* 779 F.Supp.2d 721, 727 (E.D. Mich. 2011) (citing *Chambliss v. Massanari,* 269 F.3d 520, 522 (5th Cir. 2001)).

(Doc. #7, *PageID* #1013). Next, this Court faulted ALJ McNichols' decision for its unclear explanation:

> [T]he ALJ stated that he "considered the [VA's] determination," but failed to specifically state the weight assigned. PageID 90. It appears that the ALJ afforded such determination little to no weight, but the explanation for this apparent conclusion is not entirely clear. Instead, the ALJ simply stated that, "for the reasons discussed above, the undersigned finds that the residual functional capacity … for a reduced range of sedentary work adequately accounts for the claimant's back and neck pain, headaches, depression, anxiety, and history of PTSD." PageID 90. The ALJ's decision preceding this statement sets forth multiple reasons, and the Court is left to speculate which of the "reasons discussed above" actually apply to the specific determination by the VA. PageID 87-90. The undersigned concludes that in the absence of some meaningful explanation by the ALJ regarding the weight actually accorded the VA's disability determination, and the specific reasons therefor, "the Court on review is left to speculate on the ALJ's rationale[.]" *King [v Comm'r of Soc. Sec.*, 779 F.Supp.2d 721, 726 (E.D. Mich. 2011)].
>
> Accordingly, the undersigned concludes that "[t]he record on the VA's disability determination has not been developed, and the Court cannot determine that substantial evidence supports the ALJ's determination. *Id.* at 727….

(Doc. #7, *PageID* #s 1013-14).

As noted previously, upon the resulting remand from this Court, ALJ Motta took over. What did ALJ Motta say (on remand) about the VA's disability determination?

7

Nothing meaningful or specific, in Plaintiff's view. This is incorrect.

The ALJ placed moderate weight on the VA's disability rating and provided many meaningful reasons for doing so. She explained that the determination was entitled to moderate weight "but only to the extent it is consistent with the conclusion herein that the claimant's back, neck, and headache conditions cause more than minimal functional impairment." (Doc. #7, *PageID* #847). The ALJ therefore credited the VA's disability determination to a moderate extent by essentially agreeing with the VA that Plaintiff's impairments caused her some work-related limitations. Although the ALJ did not fully accept the VA's disability determination, her decision to give it moderate weight— combined with the reasons she provided for giving it moderate weight—satisfied and correctly reflected the notion that ALJs are not bound by, but must consider, VA disability determinations. *See Ritchie v. Comm'r of Soc. Sec.*, 540 Fed. App'x 508, 510 (6th Cir. 2013) (ALJ's stated "a proper understanding of the law" by indicating, "I am not bound by [the VA's] determination; but I did consider [it].")

The ALJ's reasons, moreover, were sufficiently meaningful and specific, and supported by substantial evidence, to justify placing moderate weight on the VA's determination. The ALJ pointed to spinal imaging (several x-rays) during the relevant period that showed mild to moderate findings. (Doc. #7, *PageID* #s 841, 847)). The ALJ also referred to Plaintiff's cervical-spine x-ray in June 2013 that showed mild findings. *Id*. And, the ALJ found Plaintiff's "fairly mild treatment history" to be insufficient to show she was under a disability under social security standards. *Id*. at 841-43, 847. This included her treatment records from the Veterans Administration Medical Center

8

(VAMC) that showed some abnormal findings but mostly normal neurological examinations. *Id*. at 841-42, 847.

Plaintiff objects to the ALJ's observation that "the VA determination appears to be diagnosis rather than function driven …" *Id*. at 847. The ALJ, however, was correct to observe the absence from the VA's determination of a discussion of Plaintiff's functional work limitations. *See* Doc. #6, *PageID* #s 508-14. The only reference to functional limitations appears to be limitations on Plaintiff's ability to bend due to degenerative disc disease in her lumbosacral spine. *See id*. at 511. Yet, the VA rated Plaintiff's lumbosacral problems at only 20% disability and stated, "[a] higher evaluation of 40%, is not warranted unless there is forward flexion of the thoracolumbar spine of 30 degrees or less; or, favorable ankylosis of the entire thoracolumbar spine." *Id*. at 512. This was largely consistent with the ALJ's limitation of Plaintiff to "occasional postural activities (climbing ramps/stairs, balancing, stooping, kneeling, crouching, crawling, and twisting from side to side)." (Doc. #7, *PageID* #839). As such, it is an example of how the ALJ placed moderate weight on the VA's determination.

Similarly, the ALJ recognized that the VA gave Plaintiff a 10% disability rating for ethmoid sinusitis, as well as a 10% disability rating for eczema . (Doc. #6, *PageID* #s 508-20,; Doc. #7, *PageID* #s 720, 846). However, as noted elsewhere in the ALJ's decision, treatment notes contain little evidence of any significant treatment for either condition, and Plaintiff made no significant mention of either condition in the initial disability reports or at the hearings associated with the claim. (Doc. #7, *PageID* #836). Substantial evidence, moreover, supports the ALJ's findings regarding the non-limiting

9

effects of Plaintiff's sinus and eczema problems. In July 2008, three months before the VA issued its determination, Plaintiff had an x-ray of her sinuses. (Doc. #6, *PageID* # 522). The report showed no evidence of sinusitis and noted that little was changed from the January 2007 study, which was normal. *Id*. at 527). At the hearing, the ALJ asked Plaintiff what impairments affected her ability to work and she discussed her back, lower back, headaches and neck. (Doc. #7, *PageID* #s 871-72). Plaintiff did not mention her sinuses or eczema. Therefore, consistent with the Social Security Regulations and Rulings, the ALJ concluded that the VA determination's disability determination regarding Plaintiff's sinus problems and eczema was not entitled to any weight. *Id*. at 836; *cf*. 20 C.F.R. § 404.1527(c)(4) (explaining, "the more consistent an opinion is with the record as a whole, the more weight we give to that opinion).

      The ALJ further noted that credibility issues are of "primary importance to Social Security evaluations and that no credibility evaluations were associated with the VA disability determination." *Id*. at 847. This constitutes a valid basis for not fully crediting the VA's determination, although there is room to quibble with the ALJ's use of the word "primary." This phrase—"primary importance"—incorrectly suggests that social security law requires ALJs to first and foremost consider an applicant's credibility. The credibility regulations do not say this, *see* 20 C.F.R. §§ 404.1528-1529, and the applicable Social Security Ruling suggests otherwise: "[A] finding that an individual's statements are not credible, or not wholly credible, is not in itself sufficient to establish that an individual is not disabled." Soc. Sec. R. 96-7p, 1996 WL 374186 at *5. The regulations and Ruling 96-7p, moreover, place greater significance on medical evidence,

10

stating, for instance, "No symptom or combination of symptoms can be the basis for a finding of disability, *no matter how genuine the individual's complaints may appear to be*, unless there are medical signs and laboratory findings demonstrating the existence of a medical determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms." *Id*. at *1 (emphasis added).  This is not to say that an applicant's credibility, or lack thereof, is insignificant as this would surely conflict with the social security law.  *See id*.; *see also* 20 C.F.R. §§ 404.158-1529; *e.g., Warner v. Comm'r of Soc. Sec*., 375 F.3d 387, 392 (6th Cir. 2004).  The point instead is that if a social security ALJ's analysis considers—first and foremost—whether an individual is credible, the analysis drifts from its legal moorings.  Doing so risks improperly minimizing or ignoring potentially dispositive medical evidence, including objective tests and medical source statements.  This in turn would be an error of significant magnitude.  *See, e.g., Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 725 (6th Cir. 2014) (ALJ erred by "ignoring substantial record evidence that supports Gentry's complaints …."); *Minor v. Comm'r of Soc. Sec.*, 513 Fed Appx. 417, 435 (6th Cir. 2013) (reversing where the ALJ "cherry-picked select portions of the record" rather than doing a proper analysis).

   Despite these observations, in the present case the ALJ's reference to credibility as "of primary significance," can be reasonably read in context to identify a significant difference between the greater significance social security regulations, as opposed to VA regulations, place on an applicant's credibility.  *Cf.  Bird v. Berryhill*, 847 F.3d 911, 913 (7th Cir. 2017) ("[T]here are differences in how the agencies evaluate claims: the VA's evaluation is pro-claimant rather than neutral: "When after careful consideration of all

11

procurable and assembled data, a reasonable doubt arises regarding the degree of disability such doubt will be resolved in favor of the claimant." 38 C.F.R. § 4.3; *Hodge v. West*, 155 F.3d 1356, 1362–63 (Fed. Cir. 1998). That is not SSA's approach."). This was a valid reason to place only moderate weight on the VA's determination in this case. *See* Social Sec. Ruling 06-03p, 2006 WL 2329939, at *7 (Aug. 9, 2006) ("because other agencies may apply different rules and standards than we do for determining whether an individual is disabled, this may limit the relevance of a determination of disability made by another agency.").

  The ALJ also discussed Plaintiff's treatment history and noted that it was "quite minimal" during the period at issue, even though she had access to substantial VA medical resources. *Id*. Substantial evidence supports this ground for not fully crediting the VA's determination. Social Security Ruing 96-7p states that an "individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints." 1996 WL 374186 at *7 (July 2, 1996). Plaintiff alleged that her symptoms were so severe that she could not work, yet as the ALJ noted, the record shows that she did not receive consistent treatment for her impairments. Plaintiff went to the VAMC for a Compensation and Pension evaluation in January 2007. (Doc. #6, *PageID* #s 576-85). Plaintiff had some abnormalities but a normal gait, normal sensation, full strength and normal neurological functioning. *Id*. at 577-78.

  The record shows no significant findings or treatment until July 2007, six months later. (Doc. #7, *PageID* # 841 (citing *PageID* #s 486-87)). Her neurological examination was normal. *Id*. at 487. A year later, in July 2008, Plaintiff returned to the VAMC for

another Compensation and Pension evaluation. *Id.* at 841 (citing *PageID* #s 558-66). Again, some abnormalities were noted but her neurological examination was normal (Doc. #6, *PageID* #562).

The next pertinent record was dated June 2009, when Aivars Vitols, D.O., performed a consultative examination at the request of the state agency. (Doc. #7, *PageID* # 841 (citing *PageID* #s 612-20)). Plaintiff continued receiving treatment in 2009 and a few times in 2010. (Doc. #7, *PageID* # 842 (citing PageID # 660-63, 666-70, 679-84). After October 2010, the record showed no further treatment for musculoskeletal impairments until April 2011, which was a month after her date last insured (PageID # 842). In light of such evidence, it was reasonable for the ALJ to discount the VA's determination on the ground that Plaintiff underwent minimal treatment of her alleged disabling symptoms when such treatment was available to her at the VMAC. *Cf. Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004) ("In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment.")

In sum, ALJ Motta's consideration of the VA's determination was sufficiently meaningful and specific, and was supported by substantial evidence. For these reasons, her decision complied with the Court's remand Order.

Plaintiff next argues that the ALJ erred by rejecting the opinions of B.T. Onamusi, MD and placing more weight on the opinions of Dr. McCloud, MD, a non-examining reviewer. Plaintiff points out the Dr. Onamusi was a specialist in occupational medicine, which the ALJ did not consider, while Dr. McCloud's specialty was orthopedics but not

13

neurology. Plaintiff further notes that Dr. McCloud reviewed the record two years before Dr. Onamusi examined Plaintiff.

Dr. Onamusi examined Plaintiff in November 2011. He diagnosed her with chronic neck pain and lower back pain, "probably degenerative in nature" and recurrent migraine headaches. (Doc. #6, *PageID* #687). Dr. Onamusi opined that Plaintiff "may have difficulty engaging in more than sedentary level activities as defined in the Dictionary of Occupational Titles. [She] will need to be able to frequently alternate positions between sitting and standing, in order to get some degree of comfort. The frequent\recurrent nature of the migraines may disrupt scheduled work activities." *Id*.

The ALJ placed little weight on Dr. Onamusi's opinions because they were "unsupported by objective signs and findings upon examination and in the preponderance of the record." (Doc. #7, *PageID* #846). This applied the correct legal criteria to the evaluation of opinions provided by one-time examining physicians. *See* 20 C.F.R. § 404.1527(c); *see also Gayheart v. Comm'r of Soc. Sec*., 710 F.3d 365, 376 (6th Cir. 2013) (nontreating physicians' opinions weighed by considering "examining relationship (or lack thereof), specialization, consistency, and supportability …."). Substantial evidence supports the ALJ's reasons for not crediting Dr. Onamusi's opinion that Plaintiff was limited to sedentary work. Dr. Onamusi, as the ALJ acknowledged, noted that Plaintiff exhibited decreased neck and back motion, mild tenderness in her cervical and paralumbar musculature, difficulty in fully extending her right knee, and pain while lying in a supine position. (Doc. #7, *PageID* #s 843). Yet, the ALJ essentially and accurately characterized Dr. Onamusi's other findings as minimal. Dr. Onamusi, for

14

example, found that Plaintiff had mild difficulty in standing on her heals and toes, relatively normal grasp and grip strength, intact cranial nerves, normal muscle power and tone, symmetrical reflexes, negative Babinski signs, intact sensation, no paraspinal muscle spasm, and negative straight-leg-raising test bilaterally.  Dr. Onamusi also observed that although Plaintiff walked with a slow and cautious gait, she was able to get on and off the examination table with only mild difficulty.  And Plaintiff could reach forward, push or pull with her upper extremities, use her hands for fine coordination and manipulative tasks, and do fine fingering movements.  (Doc. #6, *PageID* #s 686-87).  Dr. Onamusi checked boxes indicating that Plaintiff was limited to occasional lifting and carrying up to 10 pounds, and had significant limitations in her ability to sit, stand, and walk during an 8-hour work day.  *Id*. at 688-89.  Yet, Dr. Onamusi did not refer to any medical or clinical findings in support of these limitations and did not provide any explanation for these limitations even though the form he completed asked him to do so. *Id*.  Substantial evidence therefore supports the ALJ's decision not to agree with Dr. Onamusi's opinion that Plaintiff was limited to sedentary work.  *See* 20 C.F.R. 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.  The better an explanation a source provides for an opinion, the more weight we will give that opinion….").

     Plaintiff contends that the ALJ failed to give the state agency reviewers the same level of scrutiny as she gave one-time examiner Dr. Onamusi in violation of *Gayheart*, 710 F.3d at 379.  This contention, however, misapplies *Gayheart*'s recognition that, in

15

light of the hierarchical ranking of medical sources' opinions set by the regulations, "[a] more rigorous scrutiny of the treating-source opinion than the nontreating and nonexamining opinion is precisely the inverse of the analysis that the regulation requires." *Id.* This case is distinguishable from *Gayheart* for several reasons. First, there were no medical opinion from any of Plaintiff's treating physicians during the relevant time period, so the ALJ could not have scrutinized Dr. Onamusi's opinion more than she scrutinized a treating source's opinion. Without such greater scrutiny, or a violation of the treating physician rule, *see* 20 C.F.R. §404.1527(c)(2), the present case is unlike *Gayheart*.

Second, unlike the ALJ in *Gayheart*, where the ALJ failed to scrutinize the opinions of the state agency doctors, the ALJ in this case rejected some of their findings and credited others. (Doc. #7, *PageID* # 845). For instance, the ALJ explained that while the state agency physicians did not adopt Dr. Vitols's opinion—that Plaintiff needed to change positions throughout the workday—the ALJ included a sit/stand opinion in Plaintiff's residual functional capacity. (Doc. #7, *PageID* #845, referring to *PageID* #839 (finding that Plaintiff needed to be off her feet for 15 minutes out of every hour)). The ALJ also further limited Plaintiff to no more than frequent handling and fingering bilaterally to account for any upper extremity symptoms associated with Plaintiff's cervical spine condition. *Id*. at 845. In this manner, the ALJ applied more scrutiny to the opinions of the state agency physicians than Plaintiff suggests. Third, unlike the ALJ in *Gayheart*, ALJ Motta in this case provided several reasons why Dr.

16

Onamusi's opinion was not entitled to full weight.  And, as discussed above, substantial evidence supported those reasons.

Lastly, in support of her challenge to the ALJ's use of the "specialization" to discount Dr. Onamusi's opinions, Plaintiff finds information about Dr. Onamusi's specialty in occupation medicine that appears in the Ohio Medical Board's website. (Doc. #9, *PageID* #1559.  However, the citation Plaintiff provides does not lead to the State Medical Board of Ohio's website, http://www.med.ohio.gov, or to any information found there that shows Dr. Onamusi is, or was, a specialist in occupational medicine.  As a result, the factual basis for Plaintiff's "specialization" argument is lacking.  Assuming, moreover, that Dr. Onamusi is a specialist in occupational medicine, Plaintiff does not indicate that the ALJ was presented with evidence that Dr. Onamusi held this specialty, and Dr. Onamusi does not indicate in his report that he is a specialist in occupational medicine.  (Doc. #6, PageID #s 685-701).  Consequently, Plaintiff has not shown that the ALJ erred when weighing Dr. Onamusi's opinion under the "specialization" factor.

Accordingly, for all the above reasons, Plaintiff's Statement of Errors lacks merit.

## IT IS THEREFORE RECOMMENDED THAT:

1. Administrative Law Judge Motta's denial of Plaintiff's March 31, 2009 application for Disability Insurance Benefits application for Disability Insurance Benefits be affirmed; and

2. The case be terminated on the docket of this Court.


July 25, 2017                                                            *s/Sharon L. Ovington*
                                                                          Sharon L. Ovington
                                                                          United States Magistrate Judge

17

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).